LAUBACH *v.* O'MEARA.

1. MANDAMUS—PUBLIC OFFICERS—ASSESSMENT OF TAXES.

*Mandamus* will lie to compel a ministerial officer to discharge the duties imposed upon him by statute with reference to the assessment and collection of taxes, unless the circumstances are clearly such that justice requires that the writ should not issue.

2. SAME—DRAIN TAX.

Where a special assessment roll for the construction of a drain has been filed with the township clerk under 3 How. Stat. § 1740*f*2, neither the clerk nor the supervisor can refuse to take the steps prescribed by section 1740*f*3, for laying the assessment before the board of supervisors, because of alleged irregularities in the proceedings to lay out the drain.

| 107 | 29 |
| f119 | 636 |
| 107 | 29 |
| 125 | 132 |
| 107 | 29 |
| f139 | ²248 |
| 107 | 29 |
| 141 | ² 94 |

*Certiorari* to Kent; Grove, J.    Submitted October 8, 1895.    Decided November 5, 1895.

Benjamin Laubach and John Germain, as drain commissioners of the counties of Kent and Allegan, respectively, applied to the circuit court for a writ of *mandamus* to compel Michael J. O'Meara, clerk, and James S. Toland, supervisor, of the township of Byron, Kent county, to lay a certain drain assessment before the board of supervisors.  Respondents bring *certiorari* to review an order granting the writ.    Affirmed.

*W. D. Fuller*, for relators.

*Maher & Salsbury*, for respondents.

Hooker, J. The defendants are, respectively, township clerk and supervisor of Byron township, Kent county; and the relators are, respectively, drain commissioners of the counties of Kent and Allegan. Having taken proceedings to lay out a drain known as the "Byron and Dorr County Drain," they delivered the special assessment rolls to the township clerks of the respective townships of Byron and Dorr. The taxes were duly assessed and collected in Dorr township, but respondent O'Meara wrote to the relators to the effect that the township board refused to spread the assessment on the roll of Byron township, and the supervisor of that township failed to lay said special assessment before the board of supervisors. The petition for *mandamus* charges that the respondents have conspired to prevent the making of the assessment. The respondents defend upon the claim that the assessment, if made, would be invalid, because of irregularities in the proceedings to lay out the drain, and contend that this fact justified their failure to act. The drain has been completed.

The law (3 How. Stat. §§ 1740*f*2, 1740*h*) provides that the drain commissioners shall make a special assessment roll, and file it in the office of the township clerk, who is required by section 1740*f*3, on or before October 1st, to make and deliver to the supervisor a certified statement of the taxes to be raised upon the respective descriptions of land. The supervisor is, in turn, required to lay the matters thus certified before the board of supervisors. 3 How. Stat. § 1740*f*3. The duty of the clerk to certify to the supervisor, and of the supervisor to lay the matter before the board, is statutory. No discretion is lodged with either. The levy of taxes and assessments cannot depend upon the opinion of these officers as to their regularity. While they could not be compelled to perform the specified acts unless the proper assessment roll was filed and certificate delivered, it is not for them to sit in judgment upon the propriety of enforcing tax levies and assessments.

In *Smyth* v. *Titcomb*, 31 Me. 286, where a treasurer refused to issue a warrant of distress against a collector who had neglected to complete the collection of a tax, the court said:

"It does not lie with the respondent, as a ministerial officer, to object that the law under which the tax was laid was unconstitutional. He is not authorized or required to adjudicate the law. On a summary hearing on a petition for a. *mandamus*, this court will not determine the question of the constitutionality of the law, involving the rights of third persons, but will leave that question to be settled when properly presented by parties to an action. *  *  * A public officer, intrusted with the collection and disbursement of revenue, *  *  * has no right to refuse to perform his ministerial duties, prescribed by law, because he may apprehend that others may be injuriously affected by it. *  *  * He is not responsible for the law, or for the possible wrongs which may result from its execution. *  *  * Public policy, as well as public necessity and justice, require prompt and efficient action from such officers. *  *  * The consequences would be ruinous. if they could withhold their services, and the necessary means, either from timidity or captiousness, until all questions of law which might arise in the performance of their official duties should first be judicially settled."

In *People* v. *Halsey*; 53 Barb. 547, the refusal of a treasurer to issue a warrant to the sheriff to make a tax from real estate was commented upon, as follows:

"This is a mere ministerial duty, which the statute imposes upon the treasurer, and peremptorily requires him to perform, upon the return of the collector being duly made containing the necessary facts. He has no discretion to exercise in the matter, and is invested with no judicial functions whatever in regard to it."

In affirming this case, the court of appeals said that "his attempt to substitute for it his own unauthorized judgment is highly reprehensible, and should not pass without rebuke. Such conduct is subversive of good order, and detrimental to the public interests." 37 N. Y. 344.

In *Waldron* v. *Lee*, 5 Pick. 328, where it was sought to compel the town treasurer to act upon a certificate of the assessors, it was said:

"No more proper case can arise for an application like the present than where those intrusted with the collection of the revenue of the country refuse to perform their duty; for, without a vigorous compulsory power upon them, great public mischief might ensue."

The case of *Common Council of Hudson* v. *Whitney*, 53 Mich. 158, is in point. In that case it was held that a recorder cannot refuse to advertise and sell lands returned for a delinquent paving tax, on the ground that he believes the action of the council in laying the tax to be illegal, if the proceedings are sufficiently fair on their face to protect ministerial action, and the work has been done, and the tax, in a great measure, paid in.

The cases from New York indicate that it is within the discretion of the court to refuse the writ in cases where the circumstances are such as to show that justice requires it, within which rule the cases of *Nugent* v. *Erb*, 90 Mich. 278, and *Board of Supervisors of Cheboygan Co.* v. *Supervisor of Mentor Tp.*, 94 Mich. 386, would seem to come. In the present case, we think, there is nothing to take the case out of the general rule above stated.

The writ was properly issued as prayed, and the order of the circuit court is hereby affirmed.

The other Justices concurred.